**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| Broadband Technology Innovations LLC, et al.,<br><br>        Plaintiffs,<br><br>   v.<br><br>Verizon Internet Services, Inc., et al.,<br><br>        Defendants. | Civil Action No.  06-291 (JJF) |
| Verizon Internet Services, Inc. and<br>Verizon Delaware Inc.,<br><br>        Counterclaim-Plaintiffs,<br><br>   v.<br><br>Broadband Technology Innovations, LLC and<br>Pie Squared LLC,<br><br>        Counterclaim-Defendants. | Civil Action No.  06-291 (JJF) |

**JOINT ANSWER OF VERIZON DEFENDANTS AND COUNTERCLAIMS OF
VERIZON INTERNET SERVICES, INC. AND VERIZON DELAWARE INC.**

Verizon Internet Services, Inc. ("VIS"), GTE.Net LLC *d/b/a* Verizon Internet Solutions

("GTE.Net"), Verizon Services Corp. ("Verizon Services"), Telesector Resources Group, Inc.

("TRG"), Verizon Corporate Services Group Inc. ("Verizon Corporate Services"), Verizon

Advanced Data Inc. ("Verizon Advanced Data"), Verizon Avenue Corp. ("Verizon Avenue"),

Verizon Delaware Inc. ("Verizon Delaware"), and GTE Southwest, Inc. *d/b/a* Verizon Southwest

("Verizon Southwest") named as Defendants in the above-captioned suit (hereinafter referred to

collectively as "Answering Defendants" or "Verizon Defendants"), hereby answer the

Complaint, and Defendants VIS and Verizon Delaware counterclaim, as follows:

**THE PARTIES**

1.    Answering Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 1 of the Complaint and therefore deny same.

2.    Answering Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 2 of the Complaint and therefore deny same.

3.    Answering Defendants admit that VIS is a corporation organized and existing under the laws of the State of Delaware, with a principal place of business at 1880 Campus Commons Drive, Reston, Virginia.  Answering Defendants deny the remaining allegations in Paragraph 3 of the Complaint.

4.    Answering Defendants admit that GTE.Net is a limited liability company organized and existing under the laws of the State of Delaware, with a principal place of business at 4055 Corporate Drive, #400, Grapevine, Texas.  Answering Defendants deny the remaining allegations in Paragraph 4 of the Complaint.

5.    Answering Defendants admit that Verizon Services is a corporation organized and existing under the laws of the State of Delaware, with a principal place of business at 1310 N. Court House Road, Arlington, Virginia.  Answering Defendants deny the remaining allegations in Paragraph 5 of the Complaint.

6.    Answering Defendants admit that TRG is a corporation organized and existing under the laws of the State of Delaware, with a principal place of business at 104 West Street, New York, New York.  Answering Defendants deny the remaining allegations in Paragraph 6 of the Complaint.

7.    Answering Defendants admit that Verizon Corporate Services is a corporation organized and existing under the laws of the State of New York, with a principal place of

2

business at 140 West Street, New York, New York. Answering Defendants deny the remaining allegations in Paragraph 7 of the Complaint.

8.    Answering Defendants admit that Verizon Advanced Data is a corporation organized and existing under the laws of the State of Delaware, with a principal place of business at 1320 N. Court House Road, Arlington, Virginia. Answering Defendants deny the remaining allegations in Paragraph 8 of the Complaint.

9.    Answering Defendants admit that Verizon Avenue is a corporation organized and existing under the laws of the State of Delaware, with a principal place of business at 12901 Worldgate Drive, Herndon, Virginia. Answering Defendants deny the remaining allegations in Paragraph 9 of the Complaint.

10.    Answering Defendants admit that Verizon Southwest is a corporation organized and existing under the laws of the State of Delaware. Answering Defendants deny the remaining allegations in Paragraph 10 of the Complaint.

11.    Answering Defendants admit that Verizon Delaware is a corporation organized and existing under the laws of the State of Delaware, with a principal place of business at 901 Tatnall Street, Wilmington, Delaware. Answering Defendants deny the remaining allegations in Paragraph 11 of the Complaint.

## JURISDICTION AND VENUE

12.    Answering Defendants admit that the Complaint arises under patent laws of the United States, Title 35 of the United States Code, and that for this reason, this Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

13.    Answering Defendants admit only that venue is proper in the District of Delaware. Answering Defendants deny the remaining allegations in Paragraph 13 of the Complaint.

**BACKGROUND**

14.    Answering Defendants admit that on its face U.S. Patent No. 5,844,596 ("the '596 Patent) issued on December 1, 1998 listing David D. Goodman as the inventor.  Answering Defendants admit that a copy of the '596 patent was attached to the Complaint as Exhibit A.  Answering Defendants deny the remaining allegations in Paragraph 14 of the Complaint.

15.    Answering Defendants admit that on its face U.S. Patent No. 6,236,718 ("the '718 Patent") issued on May 22, 2001 listing David D. Goodman as the inventor.  Answering Defendants admit that a copy of the '718 patent was attached to the Complaint as Exhibit B.  Answering Defendants deny the remaining allegations in Paragraph 15 of the Complaint.

16.    Answering Defendants admit that on its face U.S. Patent No. 6,243,446 ("the '466 Patent") issued on June 5, 2001 listing David D. Goodman as the inventor.  Answering Defendants admit that a copy of the '446 patent was attached to the Complaint as Exhibit C.  Answering Defendants deny the remaining allegations in Paragraph 16 of the Complaint.

17.    Answering Defendants admit that on its face U.S. Patent No. 6,542,585 ("the '585 Patent")  issued on April 1, 2003 listing David D. Goodman as the inventor.  Answering Defendants admit that a copy of the '585 patent was attached to the Complaint as Exhibit D.  Answering Defendants deny the remaining allegations in Paragraph 17 of the Complaint.

18.    Answering Defendants admit that on its face U.S. Patent No. 6,970,537 ("the '537 Patent")  issued on November 29, 2005 listing David D. Goodman as the inventor.  Answering Defendants admit that a copy of the '537 patent was attached to the Complaint as Exhibit E.  Answering Defendants deny the remaining allegations in Paragraph 18 of the Complaint.

19.    Answering Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 19 of the Complaint and therefore deny same.

20.    Answering Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 20 of the Complaint and therefore deny same.

21.    Answering Defendants admit that Inline filed suit in the Eastern District of Virginia for infringement of certain patents and that the Eastern District of Virginia transferred Inline's putative claims against the Answering Defendants to the District of Delaware under 28 U.S.C. § 1404(a), which putative claims are now pending in Civil Action No. 05-866 (JJF) of this Court.  Answering Defendants deny the remaining allegations in paragraph 21 of the Complaint.

22.    Answering Defendants admit that they filed a "Motion To Compel Discovery Regarding Threshold Jurisdictional 'Ownership' Issue" on March 28, 2006, which motion speaks for itself.  Answering Defendants deny the remaining allegations in paragraph 22 of the Complaint.

23.    Answering Defendants deny the allegations in paragraph 23 of the Complaint.

24.    Answering Defendants deny the allegations in paragraph 24 of the Complaint.

25.    Answering Defendants deny that they have engaged in any ongoing acts of infringement of any valid and enforceable Inline patents.  The remainder of paragraph 25 does not contain allegations requiring a response.

### COUNT ONE
### INFRINGEMENT OF THE '596 PATENT
### (35 U.S.C. §§ 271 ET SEQ.)

26.    Answering Defendants repeat and incorporate herein the entirety of their responses contained in Paragraphs 1 through 24 above in response to Paragraph 26 of the Complaint.

27.    Answering Defendants deny the allegations of Paragraph 27 of the Complaint.

28.    Answering Defendants deny the allegations of Paragraph 28 of the Complaint.

29.    Answering Defendants deny the allegations of Paragraph 29 of the Complaint.

30.    Answering Defendants deny the allegations of Paragraph 30 of the Complaint.

31.    Answering Defendants deny the allegations of Paragraph 31 of the Complaint.

## COUNT TWO
## INFRINGEMENT OF THE '718 PATENT
## (35 U.S.C. §§ 271 ET SEQ.)

32.    Answering Defendants repeat and incorporate herein the entirety of their responses

contained in Paragraphs 1 through 24 above in response to Paragraph 32 of the Complaint.

33.    Answering Defendants deny the allegations of Paragraph 33 of the Complaint.

34.    Answering Defendants deny the allegations of Paragraph 34 of the Complaint.

35.    Answering Defendants deny the allegations of Paragraph 35 of the Complaint.

36.    Answering Defendants deny the allegations of Paragraph 36 of the Complaint.

37.    Answering Defendants deny the allegations of Paragraph 37 of the Complaint.

## COUNT THREE
## INFRINGEMENT OF THE '446 PATENT
## (35 U.S.C. §§ 271 ET SEQ.)

38.    Answering Defendants repeat and incorporate herein the entirety of their responses

contained in Paragraphs 1 through 24 above in response to Paragraph 38 of the Complaint.

39.    Answering Defendants deny the allegations of Paragraph 39 of the Complaint.

40.    Answering Defendants deny the allegations of Paragraph 40 of the Complaint.

41.    Answering Defendants deny the allegations of Paragraph 41 of the Complaint.

42.    Answering Defendants deny the allegations of Paragraph 42 of the Complaint.

43.    Answering Defendants deny the allegations of Paragraph 43 of the Complaint.

**COUNT FOUR**
**INFRINGEMENT OF THE '585 PATENT**
**(35 U.S.C. §§ 271 ET SEQ.)**

44.     Answering Defendants repeat and incorporate herein the entirety of their responses contained in Paragraphs 1 through 24 above in response to Paragraph 44 of the Complaint.

45.     Answering Defendants deny the allegations of Paragraph 45 of the Complaint.

46.     Answering Defendants deny the allegations of Paragraph 46 of the Complaint.

47.     Answering Defendants deny the allegations of Paragraph 47 of the Complaint.

48.     Answering Defendants deny the allegations of Paragraph 48 of the Complaint.

49.     Answering Defendants deny the allegations of Paragraph 49 of the Complaint.

**COUNT FIVE**
**INFRINGEMENT OF THE '537 PATENT**
**(35 U.S.C. §§ 271 ET SEQ.)**

50.     Answering Defendants repeat and incorporate herein the entirety of their responses contained in Paragraphs 1 through 24 above in response to Paragraph 50 of the Complaint.

51.     Answering Defendants deny the allegations of Paragraph 51 of the Complaint.

52.     Answering Defendants deny the allegations of Paragraph 52 of the Complaint.

53.     Answering Defendants deny the allegations of Paragraph 53 of the Complaint.

54.     Answering Defendants deny the allegations of Paragraph 54 of the Complaint.

55.     Answering Defendants deny the allegations of Paragraph 55 of the Complaint.

*       *       *

Answering Defendants hereby deny each and every allegation of the Complaint not specifically admitted herein.

**PRAYER FOR RELIEF**

Answering Defendants deny that Plaintiffs are entitled to the relief sought, or any other relief.

**<u>AFFIRMATIVE DEFENSES</u>**

1.      The Complaint fails to state a claim upon which relief can be granted.

2.      The '596, '718, '446, '585 and '537 patents are invalid and/or unenforceable under one or more provisions of Title 35, United States Code, including but not limited to 35 U.S.C. §§ 101, 102, 103 and 112.

3.      Answering Defendants' actions with respect to the use, sale or offer for sale of services relating to DSL Internet access do not infringe any properly construed, valid and/or enforceable claims of the '596, '718, '446, '585 and '537 patents.

4.      Plaintiffs' claims for damages are equitably barred in their entirety, and at the very least for any time prior to May 4, 2006, based upon their vexatious, bad-faith litigation conduct and abuse of process in concert with Inline Connection Corporation ("Inline") and others.  This conduct includes, for example, the filing of a lawsuit in April 2005 against the Answering Defendants and other Verizon Operating Telephone Company ("OTC") entities in the Eastern District of Virginia solely in the name of Inline, even though Inline had previously transferred effective ownership of the patents-in-suit to BBTI, Pie Squared and/or Paperboy Ventures LLC. The suit was filed in the Eastern District of Virginia for the ulterior purpose of evading prior adverse judicial rulings of this Court in related pending actions against AOL and EarthLink.  As part of the scheme, BBTI, Pie Squared, Inline and/or their counsel made false and/or misleading representations to the Eastern District of Virginia Court, and intentionally withheld information regarding ownership interests in the patents and the Delaware citizenship of BBTI, Pie Squared

and Paperboy Ventures, in opposing transfer of the action to this Court. The full extent of the vexatious, bad faith litigation conduct of Plaintiffs, Paperboy Ventures, Inline and others is still subject to ongoing discovery and Court-ordered production of full and complete "ownership" information on or before May 31, 2006.

5.     The claims of the '596, '718, '446, '585 and '537 patents are unenforceable under the doctrines of equitable estoppel, laches, prosecution laches, and/or unclean hands.

6.     Plaintiffs lack standing to assert their present claims.

7.     Plaintiffs fail to join indispensable parties.

8.     Answering Defendants reserve the right to assert affirmatively any other matter that constitutes an affirmative defense under applicable law and rules.

WHEREFORE, Answering Defendants pray this Court enter judgment:

A.     dismissing the Complaint with prejudice and denying each and every prayer for relief contained therein;

B.     declaring that the '596, '718, '446, '585 and '537 patents are not infringed by the use, sale or offer for sale of any of the Answering Defendants' services relating to DSL Internet access, either literally or under the doctrine of equivalents;

C.     declaring that the '596, '718, '446, '585 and '537 patents are invalid and/or unenforceable;

D.     declaring that this case is "exceptional" within the meaning of 35 U.S.C. 285, and that all costs and expenses of this action, including reasonable attorneys' fees, be awarded to Answering Defendants; and

E.     granting Answering Defendants such further relief as this Court may deem necessary, just or proper.

## COUNTERCLAIMS

## PARTIES

1.    For purposes of these Counterclaims, the parties identified in Paragraphs 3 and 11 of the Complaint, VIS and Verizon Delaware, are referred to as the "Counterclaim-Plaintiffs."

2.    Upon information and belief, Inline Connection Corporation ("Inline") is a corporation organized and existing under the laws of the Commonwealth of Virginia, with a principal place of business at 4017 Davis Place, NW #1, Washington, D.C. 20007.

3.    Upon information and belief, Counterclaim-Defendant Broadband Technology Innovations, LLC ("BBTI") is a Delaware limited liability company incorporated under the name Mercury Communications I, LLC on or about March 4, 2004 by James Coyne King, its Authorized Person.  BBTI changed its name from "Mercury Communications I, LLC" to "Broadband Technology Innovations LLC" on September 29, 2005.  Upon information and belief, BBTI's registered agent in Delaware is The Corporation Trust Company located at Corporation Trust Center, 1209 Orange Street, Wilmington, DE 19801.

4.    Upon information and belief, Counterclaim-Defendant Pie Squared LLC ("Pie Squared") is a Delaware limited liability company incorporated on or around June 18, 2003 by James Coyne King, its Authorized Person.  Upon information and belief, Pie Squared's registered agent in Delaware is The Corporation Trust Company located at Corporation Trust Center, 1209 Orange Street, Wilmington, DE 19801.

5.    Upon information and belief, Inline transferred all, or part of, its ownership interests pertaining to the '596, '718, '446, '585 and '537 patents to Counterclaim-Defendants and/or Paperboy Ventures prior to March 31, 2005.

10

## JURISDICTION AND VENUE

6.    This Court has jurisdiction over the subject matter of the counterclaims under 28 U.S.C. §§ 2201, 1331 and 1338.

7.    Venue is proper in the district pursuant to 28 U.S.C. §§ 1391 and 1400(b).

## FIRST CAUSE OF ACTION AGAINST COUNTERCLAIM-DEFENDANTS
### (For Declaratory Judgment of Noninfringement and Invalidity of the Patents-in-Suit)

8.    Counterclaim-Plaintiffs repeat and reallege the allegations of Paragraphs 1-7 of their Counterclaims as if set forth herein.

9.    In their Complaint, Counterclaim-Defendants assert that the patents-in-suit are infringed by the Counterclaim-Plaintiffs' use, sale and offer for sale of services related to DSL Internet access under 35 U.S.C. §§ 271(a), (b), (c), and/or (f), literally and/or under the doctrine of equivalents.

10.    There is a substantial and continuing controversy between Counterclaim-Plaintiffs and Counterclaim-Defendants as to the assertions of infringement of the patents-in-suit.

11.    The claims of the patents-in-suit are not infringed by the use, sale or offer for sale of any of Counterclaim-Plaintiffs' services relating to DSL Internet access.

12.    The use, sale or offer for sale of services related to DSL Internet access by Counterclaim-Plaintiffs does not infringe any properly construed, valid and enforceable claim of the patents-in-suit.

13.    The patents-in-suit are invalid and/or unenforceable under one or more provisions of Title 35, United States Code, including but not limited to 35 U.S.C. §§ 101, 102, 103 and 112.

## SECOND CAUSE OF ACTION AGAINST COUNTERCLAIM-DEFENDANTS
### (For Declaratory Judgment of Unenforceability of the Patents-in-Suit)

14.   Counterclaim-Plaintiffs repeat and reallege the allegations of Paragraphs 1-13 of its Counterclaims as if set forth herein.

15.   The claims of the patents-in-suit are unenforceable under the doctrines of equitable estoppel, laches, prosecution laches, and/or unclean hands.

16.   There were many types of systems sold and used in the 1970s and 1980s to transmit both voice and data simultaneously over twisted-pair telephone wires.  By the time Inline substantively prosecuted the patents-in-suit, and Counterclaim-Defendants filed the present lawsuit in May of 2006, much of the technical information relating to these prior art systems has been lost, destroyed, or widely scattered so as to become unavailable.  Potential witnesses also are deceased, no longer available or able to be located.

17.   Upon information and belief, while working for Bolt Beraneck and Newman, Inc. ("BBN") in the late 1980s, Inline's principal, David Goodman, allegedly conceived and began reducing to practice a system for transmitting analog video signals (*e.g.*, from a VCR) and infrared control signals (from a TV remote control device) over active telephone wiring between rooms within a residence.  Goodman filed a patent application concerning his alleged invention (*i.e.*, analog video signals/infrared control signals over active telephone wires between rooms within a residence) on July 14, 1989.  Neither this original application, nor any subsequent continuation-in-part ("CIP") application, satisfies either the "written description" or the "enablement" requirements under 35 U.S.C. §112 to support the full scope of the claims as asserted by Inline in this litigation.

18.   During the 1980s, Bellcore was developing ADSL technology that would permit the simultaneous transmission of both voice telephone signals and high-speed data (at frequencies

above voiceband) from a telephone company central office to residences and businesses over the "customer loops," *i.e.*, twisted-pair copper telephone lines. Industry committees to standardize the new ADSL technology were already active by about 1990.

19. Upon information and belief, Goodman was aware of Bell Atlantic's plans to implement Bellcore's ADSL technology to deliver, *inter alia*, voice signals and video signals from the central office to its subscribers.

20. On December 5, 1991, Goodman filed three CIP applications. The new matter disclosed in the CIP applications was limited to the distribution of signals over the internal telephone wires of a residence or, at most, from a point located adjacent to a residence such as a telephone pole or a telephone company pedestal located within a few hundred feet of the residence. Goodman and his patent attorneys deliberately delayed substantive prosecution of the three CIP applications.

21. Upon information and belief, by mid-1992, Goodman and Inline were aware that both Bell Atlantic and NYNEX had already announced ADSL systems that would transmit 1.5 Mbs of compressed digital video just above voiceband over the entire length of twisted pairs leading from the central office to the subscriber's residence.

22. Upon information and belief, throughout 1992, Inline closely followed the ADSL activities of Bell Atlantic and other telephone companies, including Bell Atlantic's announcement that it would conduct initial trials of an ADSL system in the spring of 1993.

23. In early 1993, Inline continued to closely monitor Bell Atlantic's ADSL activities. Inline's President, David Goodman, wrote to Bell Atlantic in March of 1993 asserting that his inventions might be used as an adjunct to Bell Atlantic's ADSL system to deliver a video signal over the last 200 feet or so at the subscriber's residence. Goodman expressly advised potential

investors in Inline that Bell Atlantic's ADSL system infringed Inline's patent. In addition, in May of 1993, Goodman and Inline publicly announced that "his patent attorneys, Fish and Richardson of Boston, have determined that [Inline's] patent covers the ADSL … system developed by Bellcore, and planned for introduction by Bell Atlantic this summer."

24.    In mid-1993, Goodman and Inline had discussions with certain Bell Atlantic employees about the Bell Atlantic ADSL system. During these discussions, Goodman admitted that he did not know whether the technology he had developed for Inline could even be used to send a digital signal. Nevertheless, Goodman called other Bell Atlantic employees and expressly accused the Bell Atlantic ADSL system of infringing Inline's patent rights.

25.    Shortly thereafter, Goodman and Inline publicly confirmed these infringement accusations, expressly stating that Inline's "patent and patent applications give Inline claim to many developments that will have significant impact on the communications industry … [including] the Asymmetric Digital Subscriber Line (ADSL) system … now being tested by Bell Atlantic." Inline also publicly disclosed to The Wall Street Journal, The New York Times and The Washington Post that: "Inline has been advised by its patent attorneys, Fish & Richardson of Boston, that the [Bell Atlantic] ADSL system infringes its patent."

26.    Faced with specific threats of infringement, Bell Atlantic undertook good faith efforts to ensure that its ADSL technology did not infringe any of Inline's patent rights. At that time, Inline had only one published patent, *i.e.*, the '399 Patent that issued in April, 1991. Inline never disclosed to Bell Atlantic either the existence or contents of its three December 1991 CIP applications.

27.    Upon information and belief, in July of 1993, Inline was already scheduling meetings with attorneys from a litigation law firm that might bring a patent infringement action against

Bell Atlantic.  Goodman and Inline were also closely tracking and monitoring the activities of the T1E1.4 committee that was developing industry standards for ADSL systems.

28.    Goodman and Inline participated in various meetings of the T1E1.4 committee.  At no time did Goodman or Inline ever disclose to the T1E1.4 committee members the contents of Goodman's December 1991 CIP applications or that he was deliberately delaying substantive prosecution of those applications until the committee had completed its work and issued its ADSL standards.

29.    During the remainder of 1993, Goodman and Inline continued to assert publicly that Fish & Richardson had advised Inline that its patents covered the Bell Atlantic ADSL system. Inline also received a written offer from a law firm to represent Inline on a contingency basis in patent infringement litigation against Bell Atlantic.  At the same time, Inline also contacted other litigation firms, including Fish & Richardson, about bringing suit against Bell Atlantic for patent infringement on a contingency basis.  Goodman also acknowledged to potential investors in Inline that he had accused Bell Atlantic of patent infringement, but that Bell Atlantic declined his demand for royalties.

30.    In late 1993 and 1994, Inline representatives continued to contact Bell Atlantic employees and reconfirm Inline's prior accusations that the Bell Atlantic ADSL system infringed Inline's patent rights.

31.    Bell Atlantic wrote to Inline on January 25, 1994, informing Goodman that Bell Atlantic had decided not to pursue the technology disclosed in Inline's '399 Patent (*i.e.*, the transmission of analog video signals/infrared control signals over active telephone wires between rooms within a residence) and declining Goodman's requests for further meetings.  At the same time, Bell Atlantic expressly requested that Goodman and Inline "continue to keep [Bell

Atlantic] informed of any new patents that are issued to or acquired by Inline Connection." Inline never responded to Bell Atlantic's written request. In particular, Inline never advised Bell Atlantic regarding the contents of the three December 1991 CIP applications. Instead, Inline and its patent attorneys continued to keep secret and delay any further substantive prosecution of those CIP applications. They adopted an improper "keep it alive" strategy whereby they would repeatedly refile the same patent application, receive the exact same rejection, request extensions of time, and then abandon the application after initiating a new cycle. Such delays were designed to make it harder for Bell Atlantic or other companies to challenge the validity of any patents that might ultimately issue.

32.    Thereafter, Goodman and Inline continued to closely monitor and track Bell Atlantic's development and deployment of its ADSL system, as well as the ongoing standardization activities of the TIE1.4 committee.

33.    In March of 1995, Goodman expressly represented and disclosed to a third-party potential investor in Inline that: "Fish and Richardson, Inline's patent law firm, recently opened up a department to handle 'contingency' cases. Because they know of Inline's claim against the Bells, they invited me for a meeting on February 27th. They agreed that Inline's patent very clearly covered the ADSL technology, and they are currently studying the possibility of taking Inline's case on contingency. If they don't take the case, I know of another very good patent firm that will." At the same time, Inline and its patent attorneys continued to delay substantive prosecution of the CIP applications.

34.    During the period 1990 through 1995, the T1E1.4 committee conducted a substantial portion of its standardization activity regarding ADSL technology. Although Inline continued to closely track and monitor the activities of the T1E1.4 committee, it never disclosed to the

committee either the existence or contents of the three December 1991 CIP applications, or the fact that Inline and its patent attorneys were continuing to delay substantive prosecution of the CIP applications while the committee developed its new ADSL industry standards. Both Bell Atlantic and the entire telecommunications industry invested substantial amounts of time, effort and money in the T1E1.4 Committee's ADSL standardization project.

35.    Upon information and belief, in January of 1996, Goodman conceived and disclosed a new idea on how some of his previous concepts could be extended to apply to the field of Internet access. Goodman admitted that he had not previously conceived this idea and that his thinking about his new Internet invention was changing from day to day. Nonetheless, Goodman subsequently conspired with his patent attorneys to mislead the PTO into believing that his newly conceived inventions had been part of his earlier July 1989 parent application and the third December 1991 CIP application.

36.    Upon information and belief, thereafter, Goodman and Inline continued to closely track and monitor Bell Atlantic's development and deployment of ADSL systems. They were aware at that time that ADSL would be popular because of the Internet and not because of video. For this reason, Goodman and Inline's patent attorneys had to suppress the fact that Goodman had not first conceived his Internet invention until, at the earliest, early 1996, and had to further delay substantive prosecution of the third December 1991 CIP application. At the same time, Inline continued to negotiate contingency relationships with several law firms to bring patent infringement actions regarding ADSL systems used for hi-speed Internet access or video-on-demand services.

37.    After the publication of various T1E1.4 Committee standards and technical papers, and after a huge investment by Bell Atlantic, NYNEX, GTE and the other RBOCs in deployment

of ADSL technology, Inline and its patent attorneys finally began drafting new claim language for the deliberately delayed third December 1991 CIP application.  The new claim language was first filed on April 13, 1998 and was rejected for double patenting in light of Inline's previous '399 Patent that had issued seven years earlier.  The PTO expressly found that "there is no apparent reason why [Goodman] was prevented from presenting claims corresponding to those of the instant application [*i.e.*, the newly submitted 4/13/98 claim language]" during prosecution of the '399 Patent in 1989 and 1990.  Goodman did not contest, and expressly acquiesced in, the PTO's ruling by filing a terminal disclaimer.  The newly filed claims subsequently issued on December 1, 1998 as the '596 Patent at issue in this case.

38.    Thereafter, Inline and its patent attorneys continued to keep alive additional co-pending continuation applications from the third 1991 CIP application.  On July 27, 1999, they again submitted newly drafted claim language which, after further amendments and another terminal disclaimer with respect to the '399 Patent, issued on June 5, 2001 as the '466 Patent at issue in this case.  Similarly, on April 18, 2002, Goodman and his patent attorneys submitted another set of entirely new claims which, after amendment and another terminal disclaimer with respect to the '399 Patent, issued on April 1, 2003 as the '585 Patent at issue in this case.

39.    Goodman and Inline's patent attorneys engaged in the same type of deliberate prosecution delay tactics with respect to continuation applications stemming from the original July 14, 1989 parent application.  They kept alive a long series of co-pending continuation applications while Goodman tracked and monitored the T1E1.4 committee standardization activities and the massive investment and development of ADSL systems by Verizon (as successor to Bell Atlantic, NYNEX and GTE) and other RBOCs.  In March of 2000, after almost ten years of unexplained delay, Goodman and Inline's patent attorneys submitted entirely new

claim language in a continuation of the original July 1989 parent application designed to cover then current ADSL technology. In doing so, they failed to advise the PTO of Goodman's admissions that his original conception was limited to the transmission of full video/infrared control signals between rooms within a residence and that he did not even conceive his "Internet" invention until at least January of 1996, at the earliest. As a result, and after the filing of another terminal disclaimer, the PTO allowed the new claims to issue on May 22, 2001 as the '718 Patent at issue in this case.

40.     In June of 2002, Inline filed suit against Verizon Communications, Inc. ("VCI") for infringement of the '596, '718 and '446 patents. The '585 patent had not yet issued at the time of Inline's suit. In April and June of 2002, Inline also filed suit for infringement of the same patents against AOL and EarthLink, respectively.

41.     When VCI pointed out that Inline had named the wrong Verizon entities, Inline made no attempt to amend its June 2002 complaint to add any of the proper parties, including parties subsequently named in a separate action refiled almost three years later in a different court. There is no reason why Inline could not have amended the June 2002 complaint to add Counterclaim-Plaintiffs back in the summer of 2002.

42.     Rather than attempt to add the appropriate Verizon parties in the original suit brought against VCI in 2002 in this Court, Inline voluntarily elected to proceed solely in its cases against AOL and EarthLink, which cases are still pending and active. Based upon these actions by Inline, Answering-Defendants reasonably believed that Inline had abandoned its patent infringement claims against Verizon.

43.     On or about April 6, 2005, after receiving a number of adverse rulings in the AOL/EarthLink actions, Counterclaim-Defendants, in concert with others, filed suit in the name

of "Inline" against Counterclaim-Plaintiffs and other Verizon entities in the Eastern District of Virginia in hope of utilizing the speed of that Court's docket to evade the adverse rulings by this Court in the AOL/EarthLink actions.

44. In the Complaint filed in the Eastern District of Virginia, Counterclaim-Defendants' counsel alleged that: "Inline is the owner of all right, title and interest in and to the '596, '718, '446, and '585, patents". Upon information and belief, this allegation was not true. At the time of filing of the action in Virginia, other entities, including Counterclaim-Defendants (both incorporated in Delaware) owned all, or at least part, of the interest in the patents-in-suit.

45. Upon motion by the Answering Defendants, the District Court in Virginia, on or about December 5, 2005, transferred the "Inline" action to this Court. Counterclaim-Defendants' counsel vigorously opposed this motion and alleged to the Virginia District Court that there was no reason to transfer or stay the proceedings in view of the pending litigation between AOL/EarthLink and Inline in Delaware. As part of its opposition filed "in the name of Inline," they repeatedly emphasized that Inline was a Virginia corporation, but did not reveal the fact that Inline had transferred all, or at least part, of the interest in the patents-in-suit to Counterclaim-Defendants, both of which are Delaware corporations.

46. Subsequent to the transfer, Counterclaim-Defendants and their counsel reversed their prior position and argued that the "Inline" action should be stayed pending resolution of the AOL/EarthLink actions.

47. Inline's and Counterclaim-Defendants' dilatory prosecution tactics, vexatious litigation tactics and unjustifiable delay in bringing this action render this case exceptional under 35 U.S.C. § 285, and justify the equitable relief of holding the patents-in-suit unenforceable.

WHEREFORE, Counterclaim-Plaintiffs pray for relief as follows:

A.    this Court adjudge and decree that the use, sale or offer for sale of Counterclaim-Plaintiffs' services related to DSL Internet access does not infringe any valid and enforceable claim of the '596, '718, '446, '585 and '537 patents;

B.    this Court adjudge and decree that the '596, '718, '446, '585 and '537 patents are invalid and/or unenforceable;

C.    that this case be declared exceptional pursuant to 35 U.S.C. § 285 and that this Court award Counterclaim-Plaintiffs their costs in this action, including reasonable attorneys' fees; and

D.    that this Court order such further relief as the Court may deem just and appropriate.

Respectfully submitted,

OF COUNSEL:
John B. Wyss
Kevin P. Anderson
WILEY REIN & FIELDING LLP
1776 K Street NW
Washington, DC  20006
Telephone: 202.719.7000
Facsimile:  202.719.7049

By: /s/ Jeffrey B. Bove
       Jeffrey B. Bove (#998)
       CONNOLLY BOVE LODGE & HUTZ LLP
       The Nemours Building
       1007 North Orange Street, Suite 878
       Wilmington, DE  19801
       Telephone: 302.658.9141
       Facsimile:   302.658.5614

Dated: May 26, 2006

Counsel for Verizon Defendants

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 26th day of May, 2006 a true copy of the ***Joint Answer Of Verizon Defendants And Counterclaims Of Verizon Internet Services, Inc. And Verizon Delaware Inc.*** was sent to plaintiffs counsel, in the manner indicated, upon:

      Michael K. Plimack, Esq.     (Served electronically and by overnight delivery)
      Alexander L. Brainerd, Esq.
      HELLER EHRMAN LLP
      333 Bush Street
      San Francisco, California 94104
      Alexander.Brainerd@hellerehrman.com
      Michael.Plimack@hellerehrman.com

      C. Joël Van Over, Esq.     (Served electronically and by overnight delivery)
      BINGHAM MCCUTCHEN LLP
      3000 K Street, NW, Suite 300
      Washington, DC 20007-5116
      joel.vanover@bingham.com

      Julia Heaney, Esq.     (Served by hand delivery)
      MORRIS NICHOLS ARSHT & TUNNELL LLP
      1201 N. Market Street
      Post Office Box 1347
      Wilmington, Delaware 19899-1347
      jheaney@mnat.com

                        /s/ Jeffrey B. Bove